UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD FARMER,<br><br>                              Plaintiff,<br><br>              -v.-<br><br>KARPF, KARPF & CERRUTTI P.C., *et al.*,<br><br>                              Defendants. | 19 Civ. 5947 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Richard Farmer, proceeding *pro se*, brings this action against Defendants Karpf, Karpf & Cerrutti P.C. ("KKC"); Ari Risson Karpf; Amy Karpf; Jeremy M. Cerrutti; Christine E. Burke; and Adam Charles Lease (together, the "KKC Defendants"); as well as Defendants Terc Law Office, P.C. ("TLO") and Miguel Angel Terc (together, the "Terc Defendants"). Plaintiff alleges an array of claims, including, *inter alia*, violations of various sections of New York's Judiciary Law; New York's laws relating to false advertising and deceptive practices; and federal mail fraud and wire fraud statutes. In sum and substance, Plaintiff alleges that Defendants, some of whom represented Plaintiff in a prior suit in this District before the Honorable George B. Daniels, defrauded Plaintiff and the district court as part of a scheme to secure attorney's fees and an outsized proportion of a settlement award for themselves. Defendants now move, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss Plaintiff's claims for lack of subject matter jurisdiction and, in the alternative, for failure to state a claim. For the

reasons set forth in the remainder of this Opinion, Defendants' motions to dismiss are granted.[1]

## BACKGROUND[2]

**A.    Factual Background**

On or about August 29, 2013, Plaintiff contacted the law offices of Defendant KKC, a law firm that is headquartered in Bensalem, Pennsylvania, but has offices in New York.  (Compl. ¶ 18).  Plaintiff spoke with Defendant Ari Risson Karpf, an attorney at the firm, about a potential suit Plaintiff wished to bring against his employer for wrongful retaliation and unpaid overtime wages.  (*Id.*).  Karpf assigned Defendant Adam Charles Lease, another attorney at the firm, to meet with Farmer at a location in Astoria, Queens, to discuss the case.  (*Id.* at ¶ 19).  Plaintiff met with Lease on August 30, 2013, and Lease referred to Plaintiff's potential lawsuit as "a slam dunk."  (*Id.*).  A few days after the meeting with Lease, Karpf forwarded to Plaintiff a retainer agreement with a contingency fee provision; Plaintiff executed the agreement and returned it to Karpf.  (*Id.* at ¶ 20).

On September 19, 2013, Lease filed a lawsuit on Plaintiff's behalf in this District against Hyde Your Eyes Optical Inc. ("HYEO"), which lawsuit was

---

[1]    The KKC Defendants and the Terc Defendants have filed separate motions to dismiss.  (*See* Dkt. #14-15).  For reasons that will become apparent, the Court considers the motions together and does not make distinctions between the two groups of Defendants.

[2]    The facts in this Opinion are drawn from Plaintiff's Amended Complaint (the "Complaint" or "Compl." (Dkt. #5)), which the Court accepts as the operative pleading in this action.  For ease of reference, the Court refers to the KKC Defendants' opening brief as "KKC Br." (Dkt. #14), and to the Terc Defendants' opening brief as "Terc Br." (Dkt. #15).

assigned to Judge Daniels.  (Compl. ¶ 21; *Farmer* v. *Hyde Your Eyes Optical, Inc.*, No. 13 Civ. 6653 (GBD) (S.D.N.Y.), Dkt. #1).[3]  Lease informed Plaintiff that the lawsuit would be a long process, and that Plaintiff simply had to wait until the court scheduled a settlement conference for the parties to appear.  (Compl. ¶ 21).  Lease also told Plaintiff that he would not need to appear in court until that time.  (*Id.*).  In late December 2013, after having had no contact from his attorney, Plaintiff called KKC and spoke with Allison Forte, a paralegal at the firm.  (*Id.* at ¶ 22).  Plaintiff asked Forte if his case had been scheduled on Judge Daniels's calendar, and Forte responded that nothing had yet been scheduled.  (*Id.*).  However, when Plaintiff walked into the courthouse for the Southern District of New York a few days later, he verified that his case had indeed been scheduled on the court's calendar.  (*Id.*).[4]

On January 23, 2014, Judge Daniels held an initial pretrial conference in Plaintiff's case.  (Compl. ¶ 23; *see also* 6653 Dkt. #17).  Defendant Miguel Angel Terc, an attorney at TLO, appeared on behalf of Plaintiff, while Paul Patrick Rooney, an attorney at Ellenoff Grossman & Schole, LLP, appeared on behalf of the defendants in that case.  (Compl. ¶¶ 23, 25).  Plaintiff alleges that he had never met with Terc, or engaged Terc's services prior to this conference,

---

[3]  The Court takes judicial notice of the docket in *Farmer* v. *Hyde Your Eyes Optical, Inc.*, No. 13 Civ. 6653 (GBD) (S.D.N.Y.).  *See Mangiafico* v. *Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (explaining that "docket sheets are public records of which" courts may take judicial notice).  References in this section to docket entries from that case are cited using the convention "6653 Dkt. #[ ]."

[4]  Plaintiff does not explain what brought him to the courthouse so soon after his conversation with Karpf's paralegal.  (Compl. ¶ 22).

3

or had any knowledge of Terc or TLO (*id.* at ¶ 26), although Terc had entered a Notice of Appearance as Plaintiff's counsel on October 7, 2013 (6653 Dkt. #10).

At the January 23, 2014 conference, Terc and Rooney requested that Judge Daniels refer the parties to mediation. (Compl., Ex. A). Plaintiff alleges that this was done as part of a "scheme of deceit," whereby counsel for both parties in the case before Judge Daniels sought to keep the actual parties out of the courtroom. (*Id.* at ¶ 27). This was done, Plaintiff contends, so that counsel could devise a settlement that would result in high awards and fees for the attorneys, and comparatively little award for Plaintiff. (*Id.*).

On March 27, 2014, after having not seen Lease since August 2013, Plaintiff arrived for a scheduled settlement conference in his case. (Compl. ¶ 31).[5] Before the conference began, Lease called Plaintiff out of the conference room and told Plaintiff that if he (Plaintiff) did not accept a settlement by the end of the day, KKC would no longer represent him. (*Id.*). At the conference, Lease calculated Plaintiff's damages as approximately $1,365,000. (*Id.* at ¶ 32). Opposing counsel offered a settlement amount of $20,000, but Plaintiff refused it. (*Id.* at ¶ 34). Indeed, Plaintiff refused to settle for any amount, given his belief that the entire settlement conference was rigged. (*Id.* at ¶ 33).

When the conference ended, Lease confronted Plaintiff in the elevator, screaming, "It's all your fault!" (Compl. ¶ 34). Plaintiff contacted Karpf later that evening to report on Lease's behavior, but Karpf defended Lease. (*Id.* at

---

[5] The docket for Plaintiff's prior case refers to this as a scheduled mediation session, and notes that it took place at the office of the defendants' counsel. (*See* 6653 Dkt., Minute Entry for April 2, 2014).

4

¶ 37). On April 2, 2014, Defendants jointly filed a motion to withdraw as counsel. (6653 Dkt. #29-30). Defendants claimed that Plaintiff had treated them "in a very demeaning, hostile[,] and disrespectful manner," and that they did not believe that there was "any existing relationship that would allow litigation to proceed effectively." (6653 Dkt. #30). Plaintiff, however, alleges that the motion was filed in retaliation — both for Plaintiff's reporting of Lease's misconduct and for his refusal to accept the settlement offer on March 27, 2014. (Compl. ¶ 38). On April 8, 2014, Judge Daniels granted Defendants' motion to withdraw (6653 Dkt. #31), and on April 9, 2014, Plaintiff confirmed his intention to proceed *pro se* (6653 Dkt. #33).

On April 17, 2014, Judge Daniels referred the case to Magistrate Judge James L. Cott for general pretrial supervision. (6653 Dkt. #36). On May 14, 2014, Plaintiff and counsel for the defendants appeared before Judge Cott to discuss a number of issues that the defendants had raised in a prior letter to the court, as well as the discovery schedule and the possibility of renewed settlement discussions. (Compl. ¶ 39; 6653 Dkt. #42). Plaintiff alleges that when Judge Cott asked Rooney whether he had previously appeared on behalf of the defendants before Judge Daniels, Rooney responded that he had not. (Compl. ¶ 40). Plaintiff alleges that Rooney lied to Judge Cott because he wished to cover up his involvement in collaborating with Defendants on their scheme to defraud the district court and Plaintiff. (*Id.* at ¶¶ 42-43). Plaintiff

himself uncovered the scheme in July 2018, when he ordered transcripts for the proceedings in his prior case. (*Id.* at ¶ 44).[6]

## B. Procedural Background

Plaintiff, proceeding *pro se*, filed this action on June 25, 2019. (Dkt. #2). On July 22, 2019, the Court scheduled an initial pretrial conference for October 24, 2019. (Dkt. #4). On August 9, 2019, prior to Defendants being served with process and the original complaint, Plaintiff amended his pleading and filed the operative Complaint. (Dkt. #5). On October 8, 2019, the KKC Defendants asked the Court for leave to file a motion to dismiss. (Dkt. #9). That same day, the Terc Defendants similarly requested leave to file a motion to dismiss. (Dkt. #11). On October 9, 2019, the Court issued an order adjourning the initial pretrial conference and scheduling motion practice for the anticipated motions to dismiss. (Dkt. #13). On November 6, 2019, both sets of Defendants filed their respective motions to dismiss. (Dkt. #14-15). Plaintiff filed an affirmation in opposition to Defendants' motions on December 19, 2019. (Dkt. #16). On January 3, 2020, Defendants collectively informed the Court that they had determined that no reply papers needed to be filed, and that they would not be submitting any, closing the briefing for Defendants' motions. (Dkt. #17).

---

[6]    Although not mentioned in Plaintiff's Complaint, the docket for Plaintiff's prior case indicates, among other things, that several new attorneys entered notices of appearance on Plaintiff's behalf in 2015 (6653 Dkt. #104, 112, 126), and that the case was resolved by settlement between the parties in or about July 2015 (6653 Dkt. #132, 133).

## DISCUSSION

## The Court Dismisses Plaintiff's Complaint for Lack of Subject Matter Jurisdiction

**A.     Applicable Law**

Although the KKC Defendants move to dismiss under Rule 12(b)(6) for failure to state a claim (KKC Br. 8), the Court believes, in accordance with the Terc Defendants' motion (Terc Br. 8), that this case is better analyzed under Rule 12(b)(1) as a challenge to the Court's subject matter jurisdiction.  *Cf. Transatlantic Marine Claims Agency, Inc.* v. *Ace Shipping Corp.*, 109 F.3d 105, 107 (2d Cir. 1997) (explaining that challenges to a court's subject matter jurisdiction may be raised *sua sponte*).  Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione* v. *Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions.  *See Carter* v. *HealthPort Technologies, LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114 (2d Cir. 2017).  A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or

the complaint and exhibits attached to it." *Carter*, 822 F.3d at 56. A plaintiff opposing such a motion bears "no evidentiary burden." *Id.* Instead, to resolve a facial Rule 12(b)(1) motion, a district court must "determine whether [the complaint and its exhibits] allege[ ] facts that" establish subject matter jurisdiction. *Id.* (quoting *Amidax Trading Grp. V. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). And to make that determination, a court must accept the complaint's allegations as true "and draw[ ] all reasonable inferences in favor of the plaintiff." *Id.* at 57 (internal quotation marks and citation omitted).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits." *Id.* "In opposition to such a motion, [plaintiffs] must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz*, 872 F.3d at 119 (internal citations and quotations omitted). If a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to subject matter jurisdiction." *Carter*, 822 F.3d at 57.

### B. Plaintiff's Complaint Does Not Fall Within the Court's Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, "and lack the power to disregard such limits as have been imposed by the Constitution or Congress."

8

*Platinum-Montaur Life Scis., LLC* v. *Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 616 (2d Cir. 2019). Generally speaking, there are only two bases for subject matter jurisdiction: (i) the presence of a "federal question"; or (ii) the existence of complete diversity between the parties and an amount in controversy in excess of $75,000. 28 U.S.C. §§ 1331, 1332. To have complete diversity, "all plaintiffs must be citizens of states diverse from those of all defendants." *Pa. Pub. Sch. Emps. Ret. Sys.* v. *Morgan Stanley & Co., Inc.*, 772 F.3d 111, 118 (2d Cir. 2014) (citing *Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)).

Plaintiff does not allege that the Court may exercise subject matter jurisdiction on the basis of diversity (*see* Compl. ¶ 46), nor could he. Although the Complaint does not provide the relevant domiciles of all the parties in this action, a review of the Complaint and the docket indicates that Plaintiff and at least some Defendants are citizens of New York. (*See* Dkt. #1 (indicating that Plaintiff resides in Flushing, Queens); Compl. ¶ 50 (identifying Defendant KKC as a "New York domestic for-profit entity")). Therefore there cannot be subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff does allege that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, also known as "federal question" jurisdiction. However, the only federal claims that Plaintiff alleges are based on criminal statutes. (*See* Compl. ¶¶ 68, 69, 72). "'It is a truism … that in our federal system crimes are always prosecuted by the Federal Government,' not by private complaints." *Dourlain* v. *Comm'r of Taxation & Fin.*, 133 F. App'x 765,

9

767 (2d Cir. 2005) (summary order) (quoting *Ct. Action Now, Inc.* v. *Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972)). "To conclude otherwise, a party must show that Congress specifically intended to create a private right of action." *Id.* at 767-68 (citing *Gonzaga Univ.* v. *Doe*, 536 U.S. 273, 283 (2002)). Here, even affording Plaintiff all the solicitude he is owed as a *pro se* litigant, the Court cannot find that he has met his burden of showing that Congress intended for either the mail fraud or wire fraud statutes to be privately enforceable.[7] Moreover, there is ample authority supporting the proposition that the mail fraud and wire fraud statutes cannot serve as private rights of action. *See, e.g.*, *Kashelkar* v. *Bluestone*, 306 F. App'x 690, 692 (2d Cir. 2009) (summary order) (explaining that 18 U.S.C. § 1341 does not create a private right of action); *Bologna* v. *Allstate Ins. Co.*, 138 F. Supp. 2d 310, 322 (E.D.N.Y. 2001) (explaining that 18 U.S.C. § 1343 does not create a private right of action (citing *Official Publ'ns, Inc.* v. *Kable News Co.*, 884 F.2d 664, 667 (2d Cir. 1989))). Therefore, there is no basis for federal question jurisdiction either.

---

[7] Plaintiff also alleges claims, with no specificity, under a vast swath of the federal criminal code. (*See* Compl. ¶ 68 (claiming violations of 18 U.S.C. §§ 1-2725)). Such a broad and imprecise allegation cannot satisfy any pleading standard. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (explaining that a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement" (internal quotation marks and brackets omitted)).

Lacking any basis upon which it may assert subject matter jurisdiction, the Court will dismiss this action.[8] Defendants' motions to dismiss are granted.[9]

## CONCLUSION

For the reasons set forth in this Opinion, Defendants' motions to dismiss are GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: April 20, 2020
New York, New York

*(signature)*

KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*
Richard Farmer
136-20 38th Ave. #3D
Flushing, NY 11354

---

[8] Although no party has raised the issue, the Court acknowledges that there is Second Circuit case law supporting the possibility that the Court could exercise supplemental jurisdiction over Plaintiff's claims, using the prior district court's subject matter jurisdiction as a hook. *See Achtman* v. *Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 336 (2d Cir. 2006) (holding that a district court could exercise supplemental jurisdiction over a malpractice action based on that same court's subject matter jurisdiction over a prior and related securities litigation). However, even if there were a valid basis for supplemental jurisdiction, the Court declines to exercise such jurisdiction pursuant to 28 U.S.C. § 1367(c)(2), given the degree to which the claims presented in the instant action so substantially outweigh the claims previously asserted in the dismissed prior action before Judge Daniels.

[9] Lacking subject matter jurisdiction, the Court may not consider further the merits of Defendants' arguments. *See Lowell* v. *Lyft, Inc.*, 352 F. Supp. 3d 248, 253 (S.D.N.Y. 2018).